UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) ) | |
| **v.** | ) ) | **CRIMINAL NO. 08-42-P-H-01** |
| **FREDERICK GATES,** | ) ) ) | |
| **DEFENDANT** | ) | |

**DECISION AND ORDER ON DEFENDANT'S
MOTION TO DISMISS**

The defendant Frederick Gates has moved to dismiss the charges against him, charging violations of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and his Sixth Amendment right to a speedy trial. I conclude that Gates has not established a violation of either the statute or the Constitution because he is accountable for the delays in question. I therefore **DENY** the motion.

**BACKGROUND**

Frederick Gates was arrested and made his initial appearance before a federal magistrate judge on February 1, 2008. He was arraigned on March 4, 2008, on a two-count indictment charging drug offenses. On March 24, 2008, Gates's lawyer moved for an extension of time to file pre-trial motions. Unopposed Mot. for Extension of Time to File Pretrial Mots. (Docket Item 42). Gates's lawyer filed a separate document stating that Gates "waive[d] his right to a speedy trial, for the motion for an extension of time to April 4, 2008." Speedy Trial Waiver

(Docket Item 45). In a second motion on April 4, 2008, defense counsel again moved to extend the deadline to file pre-trial motions. Unopposed Mot. for Extension of Time to File Pretrial Mots. (Docket Item 50). The lawyer stated in this motion that "Gates, through counsel, hereby waives his right to a speedy trial until April 11, 2008." Id. The court granted both these motions, finding in each instance that "the ends of justice served by the requested extension of time outweigh the best interest of the public and the Defendant in a speedy trial." Speedy Trial Order (Docket Item 46); Speedy Trial Order (Docket Item 51). Accordingly, the time period between March 24, 2008, and April 11, 2008, was excluded from calculations under the Speedy Trial Act. See id.

On February 12, 2009, when the court resolved a pending motion to suppress,[1] Gates's lawyer moved to continue trial, stating in the motion that Gates "waiv[ed] his right to speedy trial." Def.'s Mot. to Continue Trial (Docket Item 135). The court granted the motion, again finding that "the ends of justice served by the requested extension of time outweigh the best interest of the public and the defendant in a speedy trial." Speedy Trial Order (Docket Item 137). Accordingly, the time period between March 2, 2009, and April 6, 2009, was excluded from calculations under the Speedy Trial Act. See id.

---

[1] Gates acknowledges that the speedy trial clock stopped while his motion to suppress was pending. Mot. to Dismiss at 4 (Docket Item 208). The Motion to Suppress (Docket Item 52) was filed April 11, 2008, an Amended Motion to Suppress (Docket Item 71) was filed June 19, 2008, and a Supplemental Motion to Suppress (Docket Item 98) was filed August 8, 2008. After granting the prosecution's unopposed motion to extend time to file a response to the consolidated motion to suppress, the Magistrate Judge held the Suppression Hearing on November 11, 2008 (Docket Item 117) and issued his Report and Recommended Decision on December 19, 2008 (Docket Item 123). After the briefing was completed on Gates's objection to the Report and Recommended Decision, I rejected his objection on February 12, 2009.

2

Gates, represented by a new lawyer, now challenges these three extensions on the basis that Gates did not know of his previous lawyer's motions and thus did not consent to the motions or to a waiver of his right to a speedy trial. Mot. to Dismiss (Docket Item 208). Gates contends that a total of seventy-four days were improperly excluded from calculation under the Speedy Trial Act. Id. at 4.[2] Gates also argues that the amount of time that has elapsed since his arrest over a year ago violates his constitutional right to a speedy trial. Id. at 5.

## Analysis

### *(1) Speedy Trial Act*

The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). However, "[t]he following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence:"

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the

---

[2] Gates includes March 4 through March 18, 2008, March 24 through April 11, 2008, and February 12 through March 26, 2009, in his calculations under the statute. The exclusion of six days (March 18-March 24, 2008) between Gates's arraignment on March 4, 2008, and the extended pretrial motion deadline of April 11, 2008, is attributable to a court order on discovery. See Order in Respect to Discovery (Docket Item 41). Gates posits that the period of February 12 through March 26, 2009, runs from the date that Gates's motion to suppress was resolved to the date that Gates's prior defense attorney moved to withdraw. See Mot. to Dismiss at 4. For purposes of this motion, because I ultimately reject Gates's argument on the merits, I will assume that Gates's dates and calculations are correct.

3

> basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

Id. § 3161(h)(7)(A).  In Gates's case, with respect to each of the motions at issue, the Magistrate Judge expressly found that "the ends of justice served by the requested extension of time outweigh the best interest of the public and the defendant in a speedy trial."  Gates does not take issue with these required findings under the Speedy Trial Act.

Gates concedes that "the Speedy Trial Act does not expressly require that waivers of speedy trial be voluntary, knowing and intelligent, or even that the defendant expressly consent to the exclusion of time periods from the speedy trial clock."  Mot. to Dismiss at 2-3.  Nonetheless, he argues that "because Gates did not consent to . . . his attorney's . . . requests for additional time to file pre-trial motions and certainly did not waive his rights pursuant to the Speedy Trial Act with respect to . . . the motions," the time elapsed in connection with those motions is properly includable in calculations under the Speedy Trial Act.  Id. at 3-4.  Likewise, because "Gates was not consulted about the motion to continue, did not consent to the motion to continue, and did not waive his rights under the Speedy Trial Act," Gates contends that the time elapsed in connection with the motion to continue should also be included.  Id. at 4.  Gates cites no authority supporting his position.  See id. at 3-4.

The great weight of authority is contrary to Gates's position.  In United State v. Lewis, 39 F. App'x 337 (7th Cir. 2002), for example, the defendant presented Gates's same argument:  that because he did not personally agree to his lawyer's

motion for a continuance, the Speedy Trial Act clock was not tolled. The Seventh Circuit flatly rejected the argument, noting that "in 'our system of representative litigation, . . . [a] party is deemed bound by the acts of his lawyer-agent.'" Id. at 339 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 634 (1962)). The court held that "scheduling matters" such as extensions and continuances are generally controlled by counsel, and that the right to speedy trial is not a basic right as to which a defendant must be personally involved and effect an informed waiver. Id. at 339-40; see also Gonzalez v. United States, 128 S. Ct. 1765, 1770 (2008) ("[A] scheduling matter . . . is a tactical decision that is well suited for the attorney's own decision."). Rather, the defendant's lawyer, in waiving the speedy trial right, "necessarily spoke for [the defendant]." Lewis, 39 F. App'x at 340. Other circuits addressing this issue also have uniformly rejected Gates's position. See, e.g., United States v. Bryant, 1998 WL 39393, at *3-4 (4th Cir. Feb. 2, 1998) (holding, where the defendant "did *not* agree to the continuance[,] only his defense counsel agreed to it," that to include the otherwise tolled time period would "be permitting [a] sort of sandbagging, *i.e.,* permitting a defendant to use the services of his counsel when it suited him, but disavowing his counsel's advice when that advice did not suit the defendant's purposes"); United States v. Fields, 39 F.3d 439, 443 (3d Cir. 1994) (describing the defendant's argument as "disturbing[,] because he would have [the court] order the dismissal of his indictment based on continuances that his own attorney sought").

The Supreme Court, analyzing a similar provision of the Interstate Agreement on Detainers,[3] noted:

> [W]hen [agreement to a specified delay in trial] is under consideration, only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case. Likewise, only counsel is in a position to assess whether the defendant would even be prepared to proceed any earlier. Requiring express assent from the defendant himself for such routine and often repetitive scheduling determinations would consume time to no apparent purpose.

New York v. Hill, 528 U.S. 110, 115 (2000). Relying on Hill, Judge Woodcock of this District recently concluded that a waiver of speedy trial rights is a "tactical decision" for which defense counsel need not obtain the defendant's consent. United States v. Troy, 564 F. Supp. 2d 42, 46-47 (D. Me. 2008); see also Dist. Attorney's Office for the Third Judicial Dist. v. Osborne, 129 S. Ct. 2308, 2330 (2009) ("[I]t is a well-accepted principle that, except in a few carefully defined circumstances, a criminal defendant is bound by his attorney's tactical decisions unless the attorney provided constitutionally ineffective assistance."); Gonzalez, 128 S. Ct. at 1770 ("Giving the attorney control of trial management matters is a practical necessity. . . . In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law should so assume."); Taylor v. Illinois, 484 U.S. 400, 417-418 (1988) ("Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial."). Judge Woodcock noted that the

---

[3] The Court noted that there are differences between the Interstate Agreement on Detainers and the Speedy Trial Act, and thus it "express[ed] no view on the subject" of waiver under the Speedy
*(continued on next page)*

6

Speedy Trial Act, like the statute at issue in Hill, "expressly provides that the motion to continue may be at the request of the defendant *or his counsel.*" Troy, 564 F. Supp. 2d at 46-47 (internal quotation omitted). Thus, the Speedy Trial Act contemplates that such a scheduling question may be left solely to the lawyer. Id. at 46; see also United States v. Tulu, 535 F. Supp. 2d 492, 499 (D.N.J. 2008) ("The plain text of the statute states that a continuance can be requested by 'the defendant or his counsel.' If Congress intended for a defendant to maintain sole control over the decision to move for a continuance, it would not have included language in the statute specifically allowing a defense attorney to seek a continuance. Nothing in the statute requires that the defendant consent to a continuance. Rather, a court can grant a continuance, over defendant's objection, upon the Government's motion, or on its own motion." (citation omitted)).

In sum, because waiver of speedy trial rights may be made by the lawyer without the knowledge of the defendant and because Gates's previous lawyer did seek the delays in question, Gates's argument under the Speedy Trial Act fails.

**(2)    *Sixth Amendment Right to Speedy Trial***

Alternatively, Gates asserts a violation of his Sixth Amendment right to a speedy trial.[4] A failed Speedy Trial Act claim does not necessarily bar a Sixth Amendment claim. See 18 U.S.C. § 3173 ("No provision of this [Speedy Trial Act] shall be interpreted as a bar to any claim of denial of speedy trial as required by

---

Trial Act. New York v. Hill, 528 U.S. 110, 117 n.2 (2000).

[4] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "This right attaches upon arrest or indictment, whichever occurs first." United States v. Santiago-Becerril, 130 F.3d 11, 21 (1st Cir. 1997). Here Gates is entitled to a computation of time for Sixth Amendment purposes from the
*(continued on next page)*

amendment VI of the Constitution."); United States v. Santiago-Becerril, 130 F.3d 11, 21 (1st Cir. 1997) ("That there was no violation of the [Speedy Trial Act] in this case would not necessarily preclude a court from finding a violation of [the defendant]'s Sixth Amendment right to a speedy trial."). Nonetheless, it is "an unusual case in which the time limits of the [Speedy Trial Act] have been met but the [S]ixth [A]mendment right to speedy trial has been violated." Santiago-Becerril, 130 F.3d at 21 (quoting United States v. Mitchell, 723 F.2d 1040, 1049 (1st Cir. 1983) (internal quotation omitted)).

Gates argues that "[t]he waiver of the right to a speedy trial, like any fundamental right, must be knowing and intelligent." Mot. to Dismiss at 3. Thus, Gates "asserts that, because he has been incarcerated without a trial and without a knowing and intelligent waiver of his right to a speedy trial, for more than eighteen months, his right to a speedy trial has been violated and . . . he has suffered prejudice." Mot. to Dismiss at 5.

The Supreme Court has identified four factors for assessing a Sixth Amendment claim: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant caused by the delay." United States v. Munoz-Franco, 487 F.3d 25, 60 (1st Cir. 2007) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). "None of these factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant."

---

date of his arrest, February 1, 2008.

Santiago-Becerril, 130 F.3d at 21 (quoting United States v. Henson, 945 F.2d 430, 437 (1st Cir. 1991) (internal quotation omitted)).  I address each factor.

### (a)  *Length of Delay*

For the first factor, the Supreme Court has recognized "that post-accusation delay approaching one year is presumptively prejudicial."  Munoz-Franco, 487 F.3d at 60 (citing Doggett v. United States, 505 U.S. 647, 652 n.1 (1992)).  Here, Gates points out that it has been a little more than eighteen months since his arrest.  Mot. to Dismiss at 5.  This factor thus weighs in Gates's favor.  See Santiago-Becerril, 130 F.3d at 21-22 (assuming that a fifteen month delay is presumptively prejudicial and finding it "long enough to tip the scales slightly in favor of [the defendant]").

### (b)  *Reasons for Delay*

The second factor, the reasons for delay, is "the focal inquiry" under the Barker balancing test.  Santiago-Becerril, 130 F.3d at 22.  Where the reasons for delay are wholly attributable to the defendant, courts generally have unhesitatingly rejected Sixth Amendment speedy trial claims.  See, e.g., Vermont v. Brillion, 129 S. Ct. 1283, 1290 (2009); Troy, 564 F. Supp. 2d at 48.  The Supreme Court explains:

> Barker instructs that "different weights should be assigned to different reasons," and in applying Barker, we have asked "whether the government or the criminal defendant is more to blame for th[e] delay." Doggett v. United States, 505 U.S. 647, 651 (1992). Deliberate delay "to hamper the defense" weighs heavily against the prosecution. Barker, 407 U.S. at 531. "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Ibid.

9

> In contrast, delay caused by the defense weighs against the defendant: "[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine." Id. at 529.  That rule accords with the reality that defendants may have incentives to employ delay as a "defense tactic": delay may "work to the accused's advantage" because "witnesses may become unavailable or their memories may fade" over time.  Barker, 407 U.S. at 521.
> Because "the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation," delay caused by the defendant's counsel is also charged against the defendant.  The same principle applies whether counsel is privately retained or publicly assigned, for "[o]nce a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program."

Brillion, 129 S. Ct. at 1290-91 (2009) (some citations omitted).

Here, the conduct of Gates's previous lawyer, requesting the extensions and continuance discussed under the Speedy Trial Act analysis, is charged against Gates under the Supreme Court's reasoning in Brillion.  Likewise, the large amount of time attributable to the resolution of Gates's motion to suppress arose from a deadline extension request by Gates's lawyer, see Unopposed Mot. for Extension of Time to File Objection to Recommended Decision on Def.'s Mot. to Suppress (Docket Item 125), and from one *unopposed* motion for deadline extension made by the prosecution, see Mot. to Extend Deadline to Respond to Def.'s Consolidated Supplemental Mot. to Suppress (Docket Item 101).  Since Gates caused and acquiesced in the great bulk of the delay in this case, that counts against him.  See Tulu, 535 F. Supp. 2d at 503 ("Every continuance granted in this case was consummated with the consent of both parties, thus the Government cannot be held to have taken any specific action to have violated Defendant's speedy trial right.  Although the Government conceded that the total

length of delay was substantial in this case, each continuance was consented to by Defendant through his counsel, and granted by the Court for a finite period with specific reasons given for the delay.").

### *(b)    Gates's Assertion of His Speedy Trial Right*

"The third factor, the defendant's assertion of his speedy trial right, 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'" Santiago-Becerril, 130 F.3d at 22 (quoting Barker, 407 U.S. at 531-32). Where a defendant "only g[ets] around to demanding his speedy trial right when it bec[omes] a possible means by which to obtain dismissal of the charges against [him]," the defendant's "failure to request a speedy trial earlier than he did weighs against him." Santiago-Becerril, 130 F.3d at 22. Gates points to nothing in the record showing that he previously asserted speedy trial concerns, and thus this third factor also counts against Gates.

### *(c)    Prejudice to Gates Caused by the Delay*

Finally, the fourth factor, the prejudice to the defendant caused by the delay, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. Th[e] [Supreme] Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532 (footnote omitted). Gates alleges that he has suffered prejudice in that he "has been held without bail and has suffered emotional distress due to the lack of resolution of his case and the

11

uncertainty about his future." Mot. to Dismiss at 5. He makes no assertion of prejudice to his defense at trial. See id.

For the first consideration of "oppressive pretrial incarceration," I simply note that the eighteen month duration of pretrial incarceration alone is insufficient. See Santiago-Becerril, 130 F.3d at 23 (stating that "over fifteen months of pretrial imprisonment without bail . . . by itself was insufficient to establish a constitutional level of prejudice"). Gates otherwise makes no argument that his incarceration has been "oppressive." See Mot. to Dismiss at 5. With respect to Gates's anxiety and concern in awaiting trial, "[w]hile this type of prejudice is not to be brushed off lightly, considerable anxiety normally attends the initiation and pendency of criminal charges; hence only undue pressures are considered." Santiago-Becerril, 130 F.3d at 23 (quoting Henson, 945 F.2d at 438). Gates does not point to any "undue" pressure, only general uncertainty as to the resolution of his case. See Mot. to Dismiss at 5. Finally, "[a]mong the three interests safeguarded by the right to speedy trial as guaranteed under the [S]ixth [A]mendment, 'the most serious is [protection against impairment of the defense] because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" Barker, 407 U.S. at 532 (citations omitted). Gates has pointed to no specific prejudice that the delay has caused to his defense at trial. Moreover, the delay was largely attributable to the defense. See United States v. Collamore, 751 F. Supp. 1012, 1029 (D. Me. 1990) (holding the defendant's constitutional right to a speedy trial was not violated by eighteen month delay where "some periods of delay resulted from Defendant's own request

for enlargements of time"). Accordingly, "this paramount interest" in no way favors Gates's Sixth Amendment claim. See Santiago-Becerril, 130 F.3d at 23.

In sum, then, I conclude that only the first of the four Barker factors favors Gates. Since Gates's previous lawyer was responsible for the delay, since Gates did not earlier assert his Speedy Trial rights, and since he has shown no prejudice to his defense, I find that the cumulative effect of the delay, viewed under all four factors, falls well short of establishing a Sixth Amendment violation.

## CONCLUSION

Because the delay at issue is a result of extensions and a continuance initiated by his own lawyer, Gates's motion to dismiss fails under both the Speedy Trial Act and the Sixth Amendment. I therefore **DENY** the motion.

**SO ORDERED.**

**DATED THIS 13TH DAY OF AUGUST, 2009**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**