UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>)<br>**v.** )<br>)<br>**FREDERICK GATES,** )<br>)<br>**DEFENDANT** | **CRIMINAL NO. 08-42-P-H-01** |

## MEMORANDUM DECISION AND ORDER ON DEFENDANT'S AMENDED MOTION TO WITHDRAW GUILTY PLEA

On September 23, 2009, at the start of the second day of his jury trial, the defendant Frederick Gates entered a conditional plea of guilty[1] to one count of conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base, or aiding and abetting; and one count of possession of fifty grams or more of cocaine base with an intent to distribute, or aiding and abetting. 21 U.S.C. §§ 846, 841(a)(1); 18 U.S.C. § 2. Now, before sentencing, Gates moves to withdraw his mid-trial guilty plea. Def.'s Am. Mot. to Withdraw Guilty Plea (Docket Item 292). His grounds are: (1) he is innocent and a witness committed perjury when testifying against him at the trial, Gates Aff. ¶¶ 3-6 (Ex. 1 to Am. Mot.) (Docket Item 292-1); (2) he "felt that [he] could not receive a fair trial because . . . there were no African-Americans on the jury," id. ¶ 7; and (3) his plea was not voluntary, intelligent, and knowing because his

---

[1] Conditioned upon his right to appeal my adverse rulings on his consolidated motions to suppress and on his Speedy Trial Act violation claim.

trial counsel promised him that he would receive a five-year sentence when, in fact, he faces a ten-year mandatory minimum sentence, id. ¶¶ 9-10, 12.  Gates requests an evidentiary hearing to resolve factual disputes.  Am. Mot. at 3.  The government objects.  Gov't's Resp. to Def.'s Am. Mot. to Withdraw Guilty Plea (Docket Item 293).  For the reasons stated below, the request for an evidentiary hearing and the motion are **DENIED**.

## ANALYSIS

Rule 11 provides that a defendant can withdraw a guilty plea before he is sentenced if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  The First Circuit has elaborated this standard into five factors:  "[1] whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; [2] the strength of the reasons offered in support of the motion; [3] whether there is a serious claim of actual innocence; [4] the timing of the motion; and [5] any prejudice to the government if the withdrawal is allowed."  United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009) (citing United States v. Padilla-Galarza, 351 F.3d 594, 597 (1st Cir. 2003)).  The key issues here are whether Gates voluntarily, intelligently, and knowingly pleaded guilty and whether he has presented plausible reasons for withdrawing his plea, including a serious claim of innocence.

**A.**     ***Voluntary, Intelligent, Knowing and Rule 11-Compliant Plea***

The colloquy required by Rule 11 is "designed to confirm a knowing, voluntary, and intelligent plea."  United States v. Cheal, 389 F.3d 35, 44 (1st Cir. 2004); see also United States v. Padilla-Galarza, 351 F.3d 594, 597 (1st Cir. 2003) ("[T]he formalities imposed by Rule 11 . . . are intended to assure

that the defendant understands the charge and the consequences of the plea." (citing United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995)).  Gates points to no defect in how I conducted the Rule 11 hearing.[2]

A defendant's statements during a properly conducted plea colloquy carry a "presumption of truthfulness." Hernandez-Hernandez v. United States, 904 F.2d 758, 762 (1st Cir. 1990); see also United States v. Mescual-Cruz, 387 F.3d 1, 9 (1st Cir. 2004) ("The defendant['s] 'declarations in open court carry a strong presumption of verity.'" (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).  Here, as in all cases, I warned Gates that he had to tell the truth during the plea colloquy.  See Rule 11 Hr'g Tr. 17:1-4, Sept. 23, 2009 (Docket Item 296) ("[Court:] You must answer my questions truthfully.  I'm going to take your answers as true and act accordingly; do you understand?  [Gates:] Yes.").  In determining whether Gates's plea was knowing, voluntary and intelligent, I therefore give great weight to his answers in the Rule 11 hearing (absent a "good reason for disregarding them," such as "undisclosed threats of violence" or "highly specific" allegations of attorney misrepresentations that are independently corroborated).  United States v. Pulido, 566 F.3d 52, 59 (1st Cir. 2009) (citations omitted); see also Padilla-Galarza, 351 F.3d at 598 ("Ordinarily, a defendant is stuck with the representations that he himself makes in open court at the time of the plea." (citing United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984)).

---

[2] He does say that "there was a failure to address . . . core issues at the Rule 11 hearing," Am. Mot. at 5, but he is referring to things that his lawyer allegedly told him in private about the length of his sentence.  As I detail later in text, I carefully examined Gates about any promises to him about his sentence.

Gates argues that he "was coerced" into pleading guilty "by a promise made to him by counsel and he reasonably did not understand the consequences of his plea." Am. Mot. at 2. He says that his trial attorney told him (1) that "[b]ased on the drug quantity, [he] would likely receive a 5-year sentence"; (2) that his attorney had spoken with the prosecutor who "would be recommending a 5-year sentence"; and (3) that "new drug laws . . . would preclude the imposition of the ten-year minimum mandatory sentence." Gates Aff. ¶¶ 9, 12.

During the Rule 11 hearing, Gates denied that he had been coerced into pleading guilty or that anyone had promised him anything. When I first asked him if anyone had tried to force him to plead guilty, he asked to speak with his lawyer. Tr. 22:6-9. After talking with Gates, his lawyer told me that Gates had not been coerced but felt pressured by the "evidence . . . here in court" and believed it was "in his best interest to plead at this point and pursue acceptance of responsibility." Id. at 22:12-17. However, I required an answer from Gates directly:

> [COURT] I know that it's a difficult choice between going to trial and not going to trial, but my question to you, has anybody threatened you or has anybody tried to force you to plead guilty?
>
> [GATES] No.
>
> [COURT] Do you have any agreement with the Government, written or verbal, about your sentence or about other charges . . . [or] any other kind of agreement with the prosecution?
>
> [GATES] No.

Id. at 22:19 – 23:6. At the end of the hearing, I again questioned Gates about anything that might have improperly influenced his plea.

4

>   [COURT] Has anyone made any promise to you as to what kind of sentence I will impose?
>
>   [GATES] No.
>
>   [COURT] Has anyone made any promise to you as to what the prosecutor's sentencing recommendation is going to be?
>
>   [GATES] No.
>
>   [COURT] I ask you finally then, do you still want to plead guilty to Counts 1 and 2 and agree to the forfeiture?
>
>   [GATES] Yes.

Id. at 26:8-18.  Gates's answers at his Rule 11 hearing therefore plainly contradict the allegations of coercion in his Amended Motion.

Gates cannot seriously maintain that he did not understand what was happening in the Rule 11 hearing; that he was not informed of the nature and elements of the charged offenses; that he did not admit the factual basis for his plea; or that he was not told that he faced a ten-year mandatory minimum sentence.

When Gates said that he did not understand something, I asked him what he did not understand and had him confer with his attorney. Id. at 5:5-9. When he suggested that the proceeding was simply a formality ("I mean I got to deal with this . . . [i]t doesn't matter anymore"), I told him, "Well, it matters to me.  I'm not taking a plea unless you understand what you're doing." Id. at 5:13-16.[3]  When I asked if he authorized his attorney to speak for him and he

---

[3] To provide context, I quote the relevant section of the transcript in full.
>   [COURT] Do you feel you understand what's happening in these proceedings this morning?
>   [GATES] Not really, but --
>   [COURT] Well, if you don't understand, then we're not going to do it. What don't you understand?

*(continued next page)*

5

said, "I have to," I reminded him that he did not "have to" and that he had a constitutional right to proceed without a lawyer. Id. at 7:13-20. Similarly, when Gates stated that he had to agree to forfeit a vehicle, I told him, "No, you don't have to. You have a choice." Id. at 9:14-20. In response to his body language, I added: "This is not a humorous issue, Mr. Gates. If at any point I decide that you're not proceeding with all your faculties, I'm just going to discontinue this. So this is not a joke." Id. at 9:21-24. At no point during the hearing, however, did Gates appear not actually to understand the proceeding or his situation. Rather, he appeared frustrated with his difficult situation and

---

> [GATES] I'm trying to figure out what benefit I get from this conditional plea. I thought maybe I got some benefits from this, but I don't.
> [COURT] Why don't you sit down and talk with your lawyer. We are ready for the jury to go forward with the trial if you don't want to go through this plea. I don't know what your questions are. I don't want to sit here --
> [GATES] I mean I got to deal with this so I'm fine with it. It doesn't matter anymore.
> [COURT] Well, it matters to me. I'm not taking a plea unless you understand what you're doing. Do you understand --
> [GATES] I'll say yeah, okay. I understand what I'm doing.
> [COURT] What don't you understand, Mr. Gates?
> [GATES] I understand what I'm doing.
> [COURT]: [Counsel]?
> [DEFENSE COUNSEL] May I?
> [GATES] Yes.
> [DEFENSE COUNSEL] Um, the issue that I think would be most in contention at sentencing would be acceptance of responsibility.

Tr. 4:24 – 6:3. Gates's lawyer proceeded to explain that he and Gates knew he could not get the third point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b), but that he hoped to get the two-level reduction under U.S.S.G. § 3E1.1(a) by pleading guilty mid-trial. (The transcript erroneously refers to both as the two-level reduction.) Gates's lawyer said also that they had discussed how the guideline range would intersect with the statutory minimum. Id. at 6:12 – 7:4. I then spoke directly with Gates.

> [COURT] Mr. Gates, you were here, did you understand what your lawyer just told me?
> [GATES] Yes.
> [COURT] And I'm going to come to that when we get to the sentencing part of what I have to go over with you, but what I want to know now is do you understand what's happening here in these proceedings?
> [GATES] Yes, I do.

Id. at 7:5-12.

6

distinctly unhappy with his choices, namely, entering a guilty plea or going forward with the trial.[4]

I also carefully determined that Gates understood the elements of the charged offenses, and Gates admitted that he committed both crimes. I asked him, "[H]ave you pleaded guilty to these two counts and agreed to the forfeiture because you actually committed those two crimes?" Id. at 10:20-22. He answered, "Yes." Id. at 10:23. When he complained that he was merely present during drug transactions (and had not therefore agreed to distribute

---

[4] Gates maintains that he did not understand the proceedings because he is not highly educated and that he displayed "depressive tendencies, despair, and feelings of helplessness" during the hearing. Def.'s Reply to Gov't's Obj. at 2 (Docket Item 297). Despair and feelings of helplessness are understandable in light of the damning evidence against Gates at the first day of trial, but they are not grounds for voiding the plea. From my observation, Gates is very intelligent and, indeed, clever in manipulating the justice system. He has never seemed particularly impressed or overwhelmed by my authority and is not easily intimidated or convinced of anything.

Gates was arrested pursuant to a warrant on February 1, 2008. Over the next nineteen months, Gates had four appointed attorneys. Trial was postponed on numerous occasions because of defense motions. In June 2009, Gates complained about not getting to trial and ultimately his fourth lawyer filed a motion to dismiss for Speedy Trial violations. In September 2009, on the eve of trial, Gates attempted to terminate his fourth attorney and asked me to appoint a new attorney more to his liking. At a hearing on September 18, in which I heard from Gates and his attorney about the breakdown in their relationship, I told Gates that he could either proceed to trial with his appointed attorney or, although I counseled against it, represent himself at trial. I would not, however, postpone his trial date any further. Gates elected to keep his attorney.

On September 22, 2009, on the morning of trial, Gates complained that he did not want to go to trial and informed me that none of his four lawyers had ever gone over his indictment with him. He also appeared before me in his prison clothes and informed me that he wanted the jury to know that he had already been in prison for twenty months. I strongly advised against this (as did Gates's lawyer), yet Gates was unfazed by the force of my argument. He told me that he wanted to get the jury to presume that he was guilty. This tactic demonstrated a clear understanding of the rules and standards of the criminal justice system and of how he might attempt to thwart them. (I also learned that Gates had steadfastly refused to cooperate with his attorney in preparing for trial.) I then went over the two counts of the indictment with Gates and explained the forfeiture he faced. I also had his attorney go over the indictment with him off the record.

Trial then began. The jury heard testimony from six witnesses, including Brandon Johnson, who testified about moving to Maine to help Gates sell crack cocaine and about selling crack with Gates over a period of months. Trial ended for the day with Johnson still on the stand.

The next morning, September 23, Gates stated that he wished to enter a conditional guilty plea. After conducting a Rule 11 hearing, I accepted his plea and dismissed the jury.

7

cocaine), I told him that "[p]resence doesn't do it," and he responded, "I agree. That's about it. . . . I helped." Id. at 20:2-6. But after discussing the elements of conspiracy with his lawyer off the record, Gates changed his mind and admitted that he had conspired with Brandon Jones. Id. at 20:15. To make sure that Gates understood this element of a conspiracy charge, I also explained to him that an illegal agreement could be spoken or unspoken, but that the government had to show that Gates and Johnson shared a general understanding about their crime. Id. at 20:6 – 21:11. Gates stated that he understood the explanation and again admitted that he had an agreement with Johnson to possess cocaine base with the intent to distribute it. Id. at 21:11-16. Finally, the record shows clearly that I advised Gates that he faced a minimum of ten years in prison, id. at 14:2-3, and after conferring with his lawyer, Gates indicated that he understood the penalties, id. at 14:16.

Gates argues, however, that I should not credit his answers during the plea colloquy. He says that he answered my questions falsely because his lawyer misrepresented the sentencing consequences to him. He says that his lawyer "kept pulling [him] aside, telling [him] what to do, and that everything would be ok." Gates Aff. ¶ 10. In other words, his claim is not that his lawyer threatened him or otherwise coerced him, but that his lawyer *convinced* him to plead guilty and that "circumstances . . . made him feel that he had no choice but to accept a plea that he simply did not understand." Def.'s Reply at 8.[5]

---

[5] What his lawyer said at the Rule 11 hearing when I asked the question was: "The hesitance here is not that anybody has coerced Mr. Gates. The evidence is here in court. He understands that. He understands the evidence and feels that it's in his best interest to plead
*(continued next page)*

8

But I made clear to Gates that he *did* have a choice and ensured that he *did* understand. It may not have been an attractive choice for Gates. The first day of trial ended with damning testimony from a co-conspirator. Yet, the "unenviable position" in которой Gates found himself was "hardly exceptional enough to evince an overbearing of his will or to have precluded a rational assessment of the available options." United States v. Marrero-Rivera, 124 F.3d 342, 350 (1st Cir. 1997). The First Circuit has said that "the strategic decision to plead guilty [is] not rendered involuntary by the anxieties and time pressures confronting [a defendant]," id., and that a plea is not involuntary because an attorney persuades a defendant to plead guilty or underestimates the merit of a defense, id. at 349 (citations omitted). To be sure, Gates's allegation that his lawyer misrepresented the applicable law and told him to lie to the court would, if true, state a claim for ineffective assistance of counsel, but Gates has not substantiated these allegations with any credible assertions of fact and his allegations are neither "highly specific" nor "accompanied by some independent corroboration." Pulido, 566 F.3d at 59-60 (quoting Butt, 731 F.2d at 80 n.5). For example, he claims that his lawyer told him that based on drug quantity, he would likely receive a five-year sentence, Gates Aff. ¶ 9, yet he also admits that he knew he faced a ten-year mandatory minimum sentence (absent "new drug laws" that would "preclude" its imposition), id. ¶ 12. Similarly, Gates says that his lawyer said that he had struck a secret deal with the prosecution about a five-year sentence, but Gates offers nothing

---

at this point and pursue acceptance of responsibility." Tr. 22:12-17. I then insisted on hearing directly from Gates on the subject.

other than his own say-so as evidence that such a deal existed or that his lawyer told him that it did.

In sum, without giving me any good reason to believe him and notwithstanding his answers during the Rule 11 plea colloquy, Gates asks me to accept that *now* he is telling the truth and that he was lying in his Rule 11 hearing. Absent independent corroboration of his claims, I can only regard these allegations as inherently untrustworthy.[6]

### B.  *Strength of Reasons / Serious Claim of Innocence*

Gates also contends he "pled guilty despite his actual innocence because he was afraid that (1) the jury would believe the false testimony of Brandon Johnson and (2) that he would not receive a fair trial because he is an African-American and there were no African-Americans on the jury." Am. Mot. at 3. These arguments are not viable given the record in this case.

Gates's claim of innocence relies entirely on his allegation that Johnson committed perjury, and he requests an evidentiary hearing to resolve factual issues raised by Johnson's testimony. Id. But that is precisely what Gates's trial offered before he aborted it. Gates chose to plead guilty before his lawyer could cross-examine his co-conspirator Johnson. Gates contends that Johnson's testimony appears credible only because the trial ended before that cross-examination, Def.'s Reply at 6, but that was Gates's choice. Had Gates wanted to challenge Johnson's testimony, he could have had his lawyer do so

---

[6] Indeed, if based on unsubstantiated claims of attorney misrepresentations, Gates could now escape his mid-trial decision to abort the trial and plead guilty and compel the government to resume the case against him, that avenue would be open to any defendant who did not like how the trial against him was proceeding.

10

then and there when the opportunity was directly before him.  Moreover, Gates does not point to any independent evidence showing that Johnson testified falsely.  He offers only his own assurance.  Here again, Gates puts himself in a difficult position.  Having argued that he lied to me in the Rule 11 hearing, he wants me now to believe his unsworn allegations rather than Johnson's sworn testimony at trial.  In any case, Gates's allegations are both conclusory and contradicted by the record.  While Gates generally alleges that Johnson "lied about [Gates's] involvement," he only specifically challenges Johnson's testimony that "the drugs he possessed for distribution actually belonged to [Gates]."  Gates Aff. ¶¶ 4-5.  But in addition to testifying that Gates sold him crack cocaine for distribution, Johnson also testified that he gave Gates a portion of his sales receipts; that Gates was obtaining cocaine from sellers in Georgia; that he saw Gates cooking cocaine; that he helped Gates cut the cocaine; and that drug paraphernalia seized by the police belonged to Gates.  Johnson also identified Robin Thiel as one of Gates's customers.  Gates has not challenged Thiel's testimony at trial that she too obtained crack cocaine from Gates and that Gates stuffed a package of crack cocaine into her pants on the day that she, Johnson, and Gates were stopped and arrested.  Gates is not entitled to an evidentiary hearing because his allegations are "contradicted by the record," "inherently incredible" given his admissions in the plea colloquy, and "merely conclusions rather than statements of fact."  See Pulido, 566 F.3d at 57 (citations omitted)).  Based on the record in this case and the nature of Gates's allegations, I cannot conclude that he has a serious claim of actual innocence supporting withdrawal of his guilty plea.

11

As to his argument about the racial composition of the jury, Gates has not even come close to alleging a prima facie Sixth Amendment claim. See United States v. Benjamin, 252 F.3d 1, 12 (1st Cir. 2001).[7]

Although the timeliness of a defendant's motion to withdraw a guilty plea is a factor in most cases, I do not consider the timing of Gates's motion to be meaningful here.  The defendant fired his trial attorney (his fourth) in early fall 2009 and had to wait for new counsel to be appointed.  Understandably, Gates's new lawyer needed time to get up to speed before filing this Amended Motion.  I also do not consider possible prejudice to the government (lost investment in the aborted trial; current access to witnesses) because I find that Gates has not otherwise met his burden.

Considering all the relevant factors in this case, I **DENY** the defendant's Amended Motion to Withdraw Guilty Plea and the request for a hearing.

**SO ORDERED.**

**DATED THIS 24TH DAY OF MARCH, 2010**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[7] Gates argues that Johnson's testimony involved racial stereotypes that might have affected the jury, Am. Mot. at 3, but he does not specifically identify anything Johnson said that might have inflamed the jury.  Such a conclusory allegation cannot provide a basis for relief.

12