UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| FREDERICK GATES, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | 2:08-cr-00042-DBH<br>2:14-cv-00397-DBH |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

In this action, Petitioner Frederick Gates moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence.  (Motion, ECF No. 360.)  During his jury trial, Petitioner pled guilty to (1) conspiracy to distribute and to possess with intent to distribute 50 grams or more of a mixture or substance containing cocaine base (Count 1), and (2) possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base (Count 2).  (Judgment, ECF No. 321 at 1; Superseding Indictment, ECF No. 79 at 1-2.)  Petitioner appealed from his conviction and sentence, and the First Circuit affirmed.  *United States v. Gates*, 709 F.3d 58 (1st Cir. 2013). On October 7, 2013, the United States Supreme Court denied his petition for a writ of certiorari. *Gates v. United States*, 134 S. Ct. 264 (2013).  Petitioner filed timely a section 2255 motion in October 2014.[1]

Petitioner claims ineffective assistance of counsel on the basis that (1) counsel complied with the Government's condition, imposed due to witness security concerns, that counsel not give

---

[1] Petitioner asserts that he placed his motion in the prison mail system on October 1, 2014, and the motion was filed on October 6, 2014.  (Motion, ECF No. 360 at 1, 13.)  The Government concedes that the motion was filed timely. (Response, ECF No. 374 at 1.)

Petitioner possession of Jencks Act[2] materials that the Government had provided in advance of trial; (2) counsel misadvised Petitioner during the plea process as to several issues, including that money seized from a witness's apartment could be attributed to Petitioner and converted to drug quantities at sentencing; (3) counsel failed to argue at sentencing that Petitioner lacked the requisite *mens rea* regarding the money attributed to him; and (4) appellate counsel failed to anticipate *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and did not make an *Alleyne*-like argument in Petitioner's direct appeal.

The Government has moved for summary dismissal of Petitioner's section 2255 motion. (Response, ECF No. 374.)

After a review of Petitioner's motion and the Government's request for dismissal, I recommend that the Court grant the Government's request, and dismiss Petitioner's motion.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In February 2008, Petitioner and co-defendant Brandon Johnson were indicted on two counts for (1) conspiracy to distribute and to possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 846, and subject to the penalty provisions of section 841(b)(1)(A) (Count 1); and (2) possession with intent to distribute 50 grams or more of cocaine base, in violation of section 841(a)(1), and subject to the penalty provision of section 841(b)(1)(A) (Count 2). (Indictment, ECF No. 34.)

In July 2008, the Government filed a superseding indictment that expanded the temporal scope of the conspiracy to a period from an unknown date in January 2007 to January 26, 2008, and added a forfeiture allegation to the existing counts. (Superseding Indictment at 1-2.)

---

[2] Title 18 U.S.C. § 3500.

Prior to trial, Petitioner filed a motion to suppress, and on appeal he challenged the Court's denial of the motion. In support of his argument, Petitioner maintained that a relevant motor vehicle stop and a residential search violated his Fourth Amendment rights. (Motion to Suppress, ECF 98.) The First Circuit upheld the searches on appeal, concluding that (1) Petitioner had waived the argument that the vehicular stop was pretextual by conceding the issue in the District Court, and (2) this Court supportably found that Petitioner consented to the residential search and that the search was also justified by Petitioner's bail conditions. *Gates*, 709 F.3d at 61-64. Petitioner does not assert in his section 2255 motion any claim of ineffective assistance of counsel regarding the motion to suppress.

Petitioner's first attorney filed an *ex parte* motion to withdraw, citing Petitioner's request that counsel withdraw and a breakdown in the attorney-client relationship.[3] (Motion to Withdraw, ECF No. 145 at 1.) In March 2009, following an *ex parte* hearing, the Court granted the motion to withdraw. (Order, ECF No. 150.) Petitioner's second attorney filed a notice of appearance in April 2009 and, in May 2009, filed a motion to withdraw, citing a breakdown in the attorney-client relationship and Petitioner's unwillingness to assist in his own defense. (Notice of Appearance, ECF No. 158; Motion to Withdraw, ECF No. 166.) The Court denied the motion following an *ex parte* hearing, and Petitioner's third attorney, who was with the same law firm as the second attorney, filed a notice of appearance.[4] (Orders, ECF Nos. 168, 170; Notice of Appearance, ECF No. 169.)

---

[3] Petitioner had several attorneys representing him, for the most part successively, from his initial appearance through his direct appeal. The attorneys are referred to simply by the order of their appearance as part of the background and procedural history of this case. In the discussion section of this recommended decision, the reference is simply to "counsel," as further identification is not material to the recommendation.

[4] The third attorney was not court-appointed. (Hearing Tr., ECF No. 333 at 29-30.)

In May 2009, the parties filed their trial briefs (Trial Briefs, ECF Nos. 172, 173.) In June 2009, Petitioner's second and third attorney filed a motion to withdraw, citing a breakdown in the attorney-client relationship, after Petitioner had filed a *pro se* motion to dismiss the indictment and a *pro se* motion to dismiss counsel. (*Pro Se* Motions, ECF Nos. 193, 196; Motion to Withdraw, ECF No. 195.) The Court granted the motion to withdraw pending the appointment of new counsel.[5] (Orders, ECF Nos. 197, 200; Hearing Tr., ECF No. 333 at 30.) New counsel, Petitioner's fourth, was appointed in June 2009. (Appointment Form, ECF No. 198.)

In July 2009, Petitioner, through counsel, filed a motion to dismiss on speedy trial grounds. (Motion, ECF No. 208.) This Court denied the motion to dismiss, and the First Circuit affirmed the decision on appeal. (Order, ECF No. 217.) *Gates*, 709 F.3d at 64-68. Petitioner does not raise issues regarding the motion to dismiss in his section 2255 motion.

In August 2009, Petitioner, through counsel, filed a motion for counsel to withdraw, citing Petitioner's request that counsel withdraw and a breakdown in the attorney-client relationship. (Motion, ECF No. 219.) This Court denied counsel's motion to withdraw. (Order, ECF No. 222.)

In September 2009, the Government filed an unopposed motion for a protective order regarding Jencks Act materials provided to Petitioner's counsel. (Motion, ECF No. 236.) In November 2009, the Court granted the motion. (Order, ECF No. 238.)

The jury trial began on September 22, 2009, but was suspended on September 23, 2009, when Petitioner entered and the Court accepted a conditional guilty plea at a hearing conducted pursuant to Fed. R. Crim. P. 11. (Minute Entry, ECF No. 246; Plea Tr., ECF No. 296 at 8, 27.) Petitioner's guilty plea was conditioned on his right to appeal the Court's adverse rulings on the

---

[5] At the hearing on the motion to withdraw, the Court explained to Petitioner that as long as he was represented by counsel, he was permitted to file a motion to withdraw, but any other type of motion, such as his *pro se* motion to dismiss the indictment, could only be filed by counsel. (Hearing Tr., ECF No. 333 at 9-10.)

4

motion to suppress and on the motion to dismiss based on an alleged Speedy Trial Act violation. (Plea Tr. at 2.)

In November 2009, Petitioner filed a *pro se* motion to withdraw counsel and to withdraw his guilty plea. (*Pro Se* Motion, ECF No. 268.) The Court granted the motion for withdrawal of counsel. (Order, ECF No. 271.) New counsel, Petitioner's fifth counsel, was appointed, but moved to withdraw in December 2009, due to a conflict of interest. (Appointment Form, ECF No. 273; Motion to Withdraw, ECF No. 280.) The Court granted the motion to withdraw. (Order, ECF No. 281.) Petitioner's sixth counsel was appointed in December 2009, and represented Petitioner through his motion to withdraw the plea and through sentencing. (Appointment Form, ECF No. 282.)

In February 2010, Petitioner filed an amended motion to withdraw his guilty plea. (Amended Motion, ECF No. 292.) In March 2010, the Court denied the motion. (Decision and Order, ECF No. 298.)

The Court held the sentencing hearing on September 21, 2010. (Minute Entry, ECF No. 319.) The Court found the facts as set forth in the revised presentence investigation report, with some modifications to the drug calculations consistent with the Government's exhibits at sentencing. (Sentencing Tr., ECF No. 325 at 39-40.) The Court calculated a total of 414 grams of cocaine base, which amount included 160 grams attributed to the $16,100 seized from the cooperating witness's home. (*Id.* at 40.) The Court converted 414 grams of cocaine base to 8,280 kilograms of marijuana equivalent, and added 54.4 grams of powder cocaine, which the Court converted to 10.9 kilograms of marijuana equivalent, for a total of 8,290.9 kilograms of marijuana equivalent. (*Id.* at 41.) The Court determined that the total amount would yield a base offense level of 34, minus two levels for the mixture of substances, pursuant to U.S.S.G. § 2D1.1,

Application Note 10(D)(i), for a base offense level of 32.[6]  (*Id.*)  Alternately, the Court calculated the amount under the new ratio of 18:1 for cocaine base to cocaine powder and arrived at the same base offense level of 32.[7]  (*Id.*)

To the base offense level, the Court added four levels for Petitioner's leadership role in the conspiracy, pursuant to U.S.S.G. § 3B1.1(a), and two levels for obstruction of justice, pursuant to section 3C1.1, because Petitioner tried to persuade someone not to testify.  (*Id.* at 42-43.)  The Court denied a reduction for acceptance of responsibility because Petitioner proclaimed his innocence when he moved to withdraw his plea.  (*Id.* at 43.)  Based on a total offense level of 38 and a criminal history category of III, the Court determined that the guideline range was from 292 to 365 months.  (*Id.*)  The Court sentenced Petitioner to a below-guidelines term of 240 months on each of the two counts, to be served concurrently, followed by five years of supervised release on each of the counts, to be served concurrently.  (*Id.* at 47; Judgment at 2.)

Through appellate counsel, Petitioner's seventh counsel, Petitioner appealed from the conviction and the sentence, and in March 2013, the First Circuit affirmed.  *Gates*, 709 F.3d at 60-61.  The Supreme Court denied Petitioner's petition for a writ of certiorari on October 7, 2013.  *Gates*, 134 S. Ct. 264.

Petitioner's section 2255 motion was filed on October 6, 2014.  (Motion, ECF No. 360 at 1.)

---

[6] The presentence investigation report applied the 2009 edition of the sentencing guidelines.

[7] The First Circuit explains in *United States v. Douglas*, 644 F.3d 39 (1st Cir. 2011), the effect of the Fair Sentencing Act of 2010 and the subsequently-adopted conforming sentencing guidelines changes.  In *Douglas*, the First Circuit noted that defendants who were sentenced between August 3, 2010, when the statute became effective, and November 1, 2010, when the new guidelines became effective, "may urge that the new guidelines *and* the new mandatory minimums should control."  *Id.* at 46.  Although *Douglas* was decided after Petitioner was sentenced, this Court's alternate calculation of Petitioner's offense level under the then yet-to-be-adopted sentencing guidelines changes was consistent with the First Circuit's statement in *Douglas*.

In February 2015, the Court entered a motion *sua sponte* to initiate a sentence modification proceeding pursuant to 18 U.S.C. §3582(c)(2), and in April 2015, the Court ordered a reduction in Petitioner's sentence from the previous below-guideline term of 240 months to 235 months, which sentence the Court determined was within the amended guideline range. (*Sua Sponte* Motion, ECF No. 371; Order, ECF Nos. 381, 382.)

## II. DISCUSSION

### A. Legal Standard for Claims of Ineffective Assistance of Counsel

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).[8] Here, to the extent that Petitioner alleges ineffective assistance of counsel, his right to counsel is guaranteed by the Sixth Amendment, and, therefore, Petitioner argues that the sentence was imposed in violation of "the Constitution or laws of the United States."

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). "[A] habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are 'vague, conclusory, or palpably incredible.'" *David*, 134 F.3d at 478 (quoting *Machibroda v.*

---

[8] Title 28 U.S.C. § 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

*United States*, 368 U.S. 487, 495 (1962)).  The Court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings thereon without convening an additional hearing."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

On a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").  The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests.  *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011).  The "cause" test is "a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.'"  *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)).  The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'"  *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89).

In reviewing claims of ineffective assistance of counsel, courts should be mindful that "'[c]ounsel is not required to waste the court's time with futile or frivolous motions.'"  *United States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991) (quoting *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978)); *see Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) ("Since [the

petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail.")

A district court that reviews claims of ineffective assistance of counsel is not required to address both prongs of the test, because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954).

### B. Ineffective Assistance: Claims and Analysis

Petitioner claims generally that six of his attorneys, including four who represented him before sentencing, sentencing counsel, and appellate counsel, provided ineffective assistance of counsel. (Motion, ECF No. 360 at 18.) The analysis below focuses only on the claims that Petitioner has identified with specificity. *See David*, 134 F.3d at 478 ("To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings.")

#### 1. Investigation and Discovery

Petitioner essentially contends that he had a right to retain possession of copies of the discovery. (Motion at 21, 25.) He argues that counsel was ineffective because counsel failed to secure Petitioner's unfettered access to the discovery. He also claims that his lack of access to the discovery led to a failure of the criminal process and thereby to a fundamental miscarriage of justice. (*Id.* at 24-25.)

The Government represents that Fed. R. Crim. P. 16 discovery was produced without restrictions.[9] However, the Government subsequently released Jencks material to counsel, earlier than required under the Jencks Act, 18 U.S.C. §3500, on the condition that counsel not leave copies with Petitioner.[10] (Response, ECF No. 374 at 31; Hearing Tr., ECF No. 332 at 5-6.) The Government represents that it imposed the condition due to witness security issues. (Hearing Tr., ECF No. 332 at 5-6.)

Petitioner does not allege that the Government's concern about witness security was unfounded. Counsel did not object to the Government's condition; rather, counsel stated, at a hearing on the withdrawal of counsel, that he agreed that the Government was entitled to impose the condition in exchange for early release of the Jencks material. (*Id.* at 12.) In his motion, Petitioner asserts no factual or legal basis that would support an objection to the Government's condition on the early release of the materials. In fact, insofar as Petitioner's counsel obtained the materials before the Government was required to produce them, counsel arguably enhanced Petitioner's preparation of his defense.

---

[9] According to Petitioner's counsel, the Government provided some initial discovery in April 2008, and counsel forwarded it to Petitioner for his review. (Motion to Extend Time to File Pretrial Motions, ECF No. 50 at 1.)

[10] Title 18 U.S.C. §3500 states in pertinent part:

> **(a)** In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
>
> **(b)** After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

Pre-trial production of Jencks material is not required by the Jencks Act. *United States v. Acosta-Colón*, 741 F.3d 179, 188-89 (1st Cir. 2013) (citing 18 U.S.C. §3500(a)).

Furthermore, the record reflects that Petitioner did not lack access to the Jencks material. In March 2009, at an *ex parte* hearing on Petitioner's motion to withdraw counsel, counsel represented that earlier that month he met in person with Petitioner and that Petitioner read the Jencks material on a disk on counsel's computer. (Hearing Tr., ECF No. 348 at 14-15.)[11]

In September 2009, the Government filed its unopposed motion for a protective order, pursuant to Fed. R. Crim. P. 16(d), to prevent the dissemination of the Jencks material in a manner that may intimidate or threaten potential witnesses.[12] (Motion, ECF No. 236.) The Government asserted that the motion related to Jencks material that the Government planned to produce on September 16, 2009. In the motion, the Government represented that it had "first hand information that the defendant is attempting to have witnesses not come to court to testify." (*Id.* at 1-2.) The Court granted the motion for a protective order. (Order, ECF No. 238.)

---

[11] Counsel represented that he also explained to Petitioner in that meeting that the Government requested that counsel not copy the material for Petitioner, and therefore counsel would not be leaving Petitioner with a copy. (Hearing Tr., ECF No. 348 at 15.) Despite counsel's explanation to Petitioner as to why he would not be permitted to retain copies of the Jencks material, Petitioner continued to press for possession of copies. In May 2009, at the next-appointed counsel's motion to withdraw, Petitioner told the Court that he wanted counsel to provide him with discovery. (Hearing Tr., ECF No. 349 at 18-19, 21, 23.) When the Court asked counsel about the status of the discovery, counsel represented that she had confirmed with the Government that the discovery was provided early on the condition that Petitioner could read the discovery, but that counsel would not provide him with copies to retain, and counsel honored the Government's request. (*Id.* at 24.) The Court denied the motion to withdraw. (*Id.* at 32.)

In that hearing, Petitioner also told the Court that he wished to contest his pretrial detention. (Hearing Tr., ECF No. 349 at 21.) Counsel represented to the Court that bail had been denied because the Court considered Petitioner to present a flight risk. (*Id.* at 25.) Counsel represented that she explained to Petitioner that because the trial was just weeks away and because the essential facts underlying the Court's bail decision had not changed since the bail hearing, there was no basis on which to request another bail hearing. (*Id.* at 26.) Petitioner does not raise any issue regarding bail in his motion, but such a claim would not be cognizable in any event because 28 U.S.C. § 2255, by its terms, applies only to claims regarding custody following sentencing.

In June 2009, Petitioner again requested the withdrawal of counsel, and counsel followed this with a motion to withdraw. (*Pro Se* Motion, ECF Nos. 190 at 1, 196; Motion, ECF No. 195.) At the hearing on withdrawal of counsel, the Court noted Petitioner's request to obtain copies of his discovery. (Hearing Tr., ECF No. 332 at 3-4.)

[12] Fed. R. Crim. P. 16(d)(1) states in pertinent part: "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."

Petitioner's arguments regarding the Jencks material fail. That is, because Petitioner's counsel actually obtained information earlier that he was legally entitled to receive the information, and because counsel shared the information with Petitioner, Petitioner cannot establish that counsel's performance was deficient, or that Petitioner was prejudiced by counsel's performance.

### 2. Guilty Plea

Petitioner asserts that counsel was ineffective regarding Petitioner's decision to plead guilty. Specifically, he alleges that (1) counsel misinformed him about whether he would be able to receive credit for acceptance of responsibility, (2) counsel inaccurately told him that his sentence would not be longer than five years, (3) counsel failed to explain to him that the money attributed to him may be converted into drug quantities for purposes of sentencing, and (4) counsel failed to explain that Petitioner was charged as an aider and abettor of the conspiracy. (Motion at 15-17, 19-20.)[13]

As to the acceptance of responsibility issue, Petitioner alleges that trial counsel misinformed him about his sentencing exposure when counsel told him that "a plea of guilty would place acceptance of responsibility on the table . . . ." (Motion at 17.) He alleges that counsel told him that "there would be a strong case for acceptance of responsibility." (Motion at 19.) In the context of its discussion of Petitioner's motion to withdraw the plea, the First Circuit stated:

> [D]efense counsel acknowledged that he had explained to the defendant that one "benefit of a plea is [that] we will have in play the issue of acceptance of responsibility, and that will make a difference in terms of where the advisory guidelines intersect with the statutory minimum." Defense counsel elaborated on this point, noting that the defendant might be "preclude[d]" from receiving any credit for acceptance of responsibility because he did not plead guilty until mid-trial, and that the issue of acceptance of responsibility would be "in contention at sentencing." These statements were accurate. *See*, *e.g.*, USSG § 3E1.1, comment. (n.2). They did not amount to false assurances, especially in light of the fact that

---

[13] In his reply, Petitioner contends that he did not admit to the specific "50 grams or more" of cocaine base alleged in each of the counts of the indictment. (Reply, ECF No. 380 at 1.) The record contradicts Petitioner's contention. At his plea hearing, Petitioner admitted to that quantity. (Plea Tr., ECF No. 296 at 20-21.)

12

the defendant confirmed at the change-of-plea hearing that no one made *any* promises to him regarding sentencing.

*Gates*, 709 F.3d a 69.

Although the First Circuit did not decide the ineffective assistance of counsel issue in the direct appeal, the First Circuit did determine, adversely to Petitioner (*i.e.*, that counsel's statements were accurate), the underlying facts regarding counsel's performance. Petitioner's claim of ineffective assistance of counsel thus fails. *See Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (noting that "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion") (quotation marks omitted); *United States v. Michaud*, 901 F.2d 5, 6 (1st Cir. 1990) (noting that some of the claims raised in the petitioner's section 2255 motion "were decided on direct appeal and may not be relitigated under different label on collateral review").

Petitioner also alleges that counsel misinformed him that he risked only a five-year sentence if he pled guilty, when in fact Petitioner's exposure was much greater. (Motion at 19-20.) In the direct appeal, the First Circuit rejected Petitioner's allegation "that his counsel assured him that pleading guilty would position him favorably to receive . . . a term of imprisonment at or near the mandatory minimum." *Gates*, 709 F.3d at 69 (citing 21 U.S.C. §841(b)(1)(A)).[14] Because the First Circuit rejected Petitioner's allegation that counsel provided false assurances as to the

---

[14] At the time of Petitioner's plea hearing in September 2009, the mandatory minimum term of imprisonment for a conviction involving 50 grams or more of a substance containing cocaine base, as alleged in each of the counts in the indictment, was ten years, and the maximum term was life in prison, pursuant to 21 U.S.C. §841(b)(1)(A)(iii). The Fair Sentencing Act of 2010 lowered the mandatory minimum prison term for convictions involving that quantity from ten years to five years, and the maximum from life to forty years. Pub. L. No. 111-220, § 2, 124 Stat. 2372 (effective August 3, 2010) (codified at 21 U.S.C. § 841(b)(1)(B)(iii)). For two reasons, the statutory amendment is not relevant for purposes of Petitioner's claim of ineffective assistance of counsel in the plea process: (1) the amendment was not in effect when Petitioner pled guilty; and (2) plea counsel made no promises to Petitioner regarding the length of the sentence, *Gates*, 709 F.3d at 69.

length of the sentence, Petitioner is precluded from relitigating that allegation on collateral review. *See Singleton*, 26 F.3d at 240; *Michaud*, 901 F.2d at 6.

Petitioner next contends that trial counsel failed to inform him, before he pled guilty, that the money found in a witness's apartment would be converted to drug quantity. (Motion at 15-16.) Petitioner maintains that if counsel had explained the sentencing guidelines regarding relevant conduct, Petitioner would have understood that if the money were converted to drug equivalents and attributed to him, he would not be eligible for a five-year sentence. (Motion at 20-21.) The record belies Petitioner's contention that he was unaware that the money could be converted to a drug quantity and attributed to him; on the first day of trial, Petitioner told the Court that none of his lawyers had explained "drug quantities, what drugs, what money they [are] trying to put on me." (Trial Tr., ECF No. 329 at 7.) Petitioner's comment reveals that he was very aware, before the trial started, that money could be converted to drugs. *See* U.S.S.G. § 2D1.1, Application Note 12.[15] Petitioner, therefore, cannot demonstrate that he was prejudiced by his counsel's alleged failure to discuss with him the conversion of the money to a drug quantity.

Finally, Petitioner alleges that trial counsel failed to explain to him "that he is the aider and abettor of the conspiracy and the substantive count." (Motion at 16.) Under the law, whether Petitioner was an "aider and abettor" or a principal (the record would support either finding) is immaterial for sentencing. The governing statute provides: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a); *see United States v. Lyons*, 740 F.3d 702, 715 (1st Cir. 2014) (quotation marks omitted) ("An aider and abettor is punishable as a principal if, first, someone else actually committed the offense and, second, the aider and abettor became associated

---

[15] This provision is currently at U.S.S.G. § 2D1.1, Application Note 5 (2014).

with the endeavor and took part in it, intending to ensure its success."). Because the distinction lacks significance at sentencing, Petitioner cannot establish that counsel's performance was deficient, or that he was prejudiced.

### 3. Sentencing

Petitioner argues that counsel failed to argue that the penalty statute, 21 U.S.C. § 841(b), and section 2D1.1 of the sentencing guidelines, lack a *mens rea* or scienter requirement. (Motion at 26-28.) He contends that such a requirement should apply to the sentencing finding regarding his alleged responsibility for the $16,100 found in the witness's apartment. (Motion at 26, 28.) Petitioner asserts elsewhere in his section 2255 motion that he was "at no time seen or caught with" the money found in the apartment. (Motion at 18.) He argues that he had a "strong desire to protest his innocence in the [witness's] conduct," and that although he entered a plea of guilty to the indictment, he "objected to any of the [witness's] assertions." (Motion at 19.) Petitioner asserts that but for counsel's deficient performance, the Court would not have attributed the money found in the witness's apartment to Petitioner. (Motion at 21.)

The Court applied a reasonable foreseeability standard as the *mens rea* standard (Sentencing Tr. at 39), which is the appropriate standard for determining drug quantity attributions at sentencing for conspiracies. *See United States v. Mullins*, 778 F.3d 37, 42 (1st Cir. 2015). In *Mullins*, the First Circuit noted:

> A defendant may be held responsible only for drug quantities "foreseeable to [that] individual." *United States v. Correy*, 570 F.3d 373, 380 (1st Cir. 2009). Foreseeability encompasses "not only . . . the drugs [the defendant] actually handled but also . . . the full amount of drugs that he could reasonably have anticipated would be within the ambit of the conspiracy." *United States v. Santos*, 357 F.3d 136, 140 (1st Cir. 2004).

*Id.* To the extent Petitioner contends that counsel's performance was substandard because counsel failed to challenge the absence of a *mens rea* requirement, the argument is without merit. To the

15

extent Petitioner contends that counsel's performance was deficient when counsel did not assert a fact-based argument, Petitioner's claim fails because in Petitioner's direct appeal, the First Circuit upheld this Court's determination that the cooperating witness's proffer was trustworthy, *Gates*, 709 F.3d at 70.[16] In other words, when the First Circuit sustained the Court's credibility finding regarding the witness who provided information regarding Petitioner's involvement with the money and the conspiracy, the First Circuit, at least implicitly, sustained the Court's *mens rea* finding. The issue may not be relitigated on collateral review. *See Singleton*, 26 F.3d at 240; *Michaud*, 901 F.2d at 6.

### 4. *Alleyne*

Petitioner claims that appellate counsel was ineffective because counsel failed to argue that the Court's attribution to Petitioner of the money found in the apartment constituted an *Alleyne*-like error and was a miscarriage of justice. (Motion at 22, 25.) Petitioner argues that the attribution of the money to him, and the conversion of that amount to drug quantity for purposes of determining his guidelines sentence, were in error because he admitted only the drug quantities cited in the indictment. (Motion at 22.) He contends that the amounts alleged in the indictment and to which he pled guilty would have resulted in a base offense level of 26, rather than the 32 level that the Court calculated. (Motion at 22-24.) He argues, therefore, that his total offense level, including four levels for a leadership role and two levels for obstruction of justice, should have been 32 rather than the 38 that the Court calculated, and that a total offense level of 32, combined with a criminal history category of III, would have yielded a sentencing range of 151-188 months, rather than the 292-365 month range determined by the Court. (Motion at 24.)

---

[16] This Court had concluded at sentencing that regardless of whether some of the money attributed to Petitioner might have gone to the Government's cooperating witness, Petitioner was responsible for it because it was part of the conspiracy. (Sentencing Tr. at 39.)

In citing *Alleyne*, Petitioner evidently argues that *Alleyne* entitles him to a jury finding of the entire drug quantity on which his sentence is based, or at least to a jury finding to determine the difference between the quantity to which he pled guilty and the quantity found at sentencing.

Petitioner misconstrues *Alleyne,* which does not apply to this case.[17] "In *Alleyne,* the Supreme Court extended the rule requiring a jury to find, beyond a reasonable doubt, any fact that increases a *maximum* statutory penalty to any fact that requires imposing a statutory *minimum* penalty." *United States v. Doe,* 741 F.3d 217, 233 (1st Cir. 2013) (emphasis added) (citing *Alleyne,* 133 S.Ct. at 2160). The First Circuit has noted that when a drug quantity sufficient to trigger a mandatory minimum term of imprisonment is admitted as part of a guilty plea, *Alleyne* does not apply. *See United States v. Ramírez–Negrón,* 751 F.3d 42, 44 (1st Cir. 2014) (holding that there is no *Alleyne* error when "all elements of the defendants' crimes of conviction . . . were admitted as part of the guilty pleas and neither defendant was sentenced based on a mandatory minimum sentence").[18] The First Circuit held that "[t]he fact that [the sentence of one of the defendants]

---

[17] The Supreme Court decided *Alleyne v. United States*, 133 S. Ct. 2151 (2013) in June 2013, which was after the First Circuit's March 2013 decision in Petitioner's direct appeal, but before the Supreme Court's October 2013 denial of Petitioner's petition for a writ of certiorari. Therefore, if *Alleyne* were otherwise applicable to this case, the claim would likely not be rejected on the ground, common in other recent cases, that *Alleyne* does not apply retroactively. *See Butterworth v. United States*, 775 F.3d 459, 461 (1st Cir. 2015) (holding that *Alleyne* does not apply "retroactively to sentences challenged on an initial petition for collateral review").

Furthermore, "[i]t is well-settled that the failure to anticipate a change in the law will not support a claim for ineffective assistance of counsel." *Coon v. United States*, --- F. App'x ---, 2015 WL 1500586, at *2, 2015 U.S. App. 5385, at *4 (11th Cir. Apr. 3, 2015) (per curiam); *see also United States v. Hendrickson*, 592 F. App'x 699, 702 (10th Cir. 2014) ("Counsel is not ineffective for failing to anticipate arguments or appellate issues that only blossomed after defendant's trial . . . .") (alteration and quotation marks omitted). Of course, counsel's failure to anticipate *Alleyne* is not an issue, given that *Alleyne* does not apply.

[18] In *United States v. Ramírez–Negrón,* 751 F.3d 42 (1st Cir. 2014), the First Circuit noted:

> It is evident from the statutory scheme that drug quantity is not an element of every drug distribution crime, including under *Alleyne*. *See Alleyne*, 133 S. Ct. at 2162 (holding that, for Sixth Amendment purposes, a fact is an element of the offense only when it alters the available sentencing range). The "default" drug distribution crime, with a sentencing range of 0 to 20 years, can be proven without any allegation of quantity at all. *See* 21 U.S.C. §841(b)(1)(C). This stands in sharp contrast to the aggravated drug distribution crimes, in which some triggering quantity of drugs must be proven. *See id.* § 841(b)(1)(A), (b)(1)(B).

17

falls above the 10-year mandatory minimum is insufficient to establish that the mandatory minimum governed or that an *Alleyne* error occurred." *Id.* at 51. "We think it follows that the fact that a sentence is above a potential mandatory minimum does not create a Sixth Amendment error where there has been no change in the elements of the crime." *Id.*

*Alleyne* is not implicated in this case because (1) Petitioner pled guilty to the drug quantity that triggered the mandatory minimum prison term which, at the time of the plea, was ten years, and (2) the term of imprisonment was not determined by the statutory mandatory minimum. "[F]actual findings made for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in *Alleyne*." *Id.* at 48. In other words, the Court may impose a prison term that exceeds the statutory minimum based on facts found by the Court rather than by a jury, as long as the judicially-found facts do not increase either the statutory minimum or the statutory maximum penalties. *See id.* "We flatly reject the proposition that all drug quantity calculations made under the advisory Guidelines must be submitted to a jury." *Id.* at 49.[19] Counsel was not deficient, nor was Petitioner prejudiced, for counsel's failure to make an *Alleyne*-like argument, given that even if counsel could have anticipated the Supreme Court's holding in *Alleyne,* it was not applicable to Petitioner's case.

---

*Id.* at 49 (footnote omitted).

[19] The Fair Sentencing Act of 2010, which became effective on August 3, 2010, does not alter the *Alleyne* analysis in this case. In *Dorsey v. United States*, 132 S. Ct. 2321 (2012), which was decided after Petitioner's September 2010 sentencing but before his judgment became final with the Supreme Court's denial, in October 2013, of his application for a writ of certiorari, the Supreme Court held that "the new, more lenient mandatory minimum provisions do apply" to defendants "who committed a crack cocaine crime before August 3, 2010, but were not sentenced until after August 3." *Id.* at 2326; *see also Ramírez–Negrón,* 751 F.3d at 49-50 & n.5. The effect of the Fair Sentencing Act was to amend 21 U.S.C. §841(b)(1) to lower the mandatory minimum term of imprisonment for Petitioner's offenses from ten years to five years. However, as discussed above, this change does not affect the *Alleyne* analysis in this case because (1) the amendment decreased rather than increased the mandatory minimum, and (2) Petitioner's sentence was "based entirely on Guidelines considerations" rather than on the mandatory minimum in any event. *See Ramírez–Negrón,* 751 F.3d at 49-50.

### III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. I recommend that the Court deny Petitioner's section 2255 motion, and deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 7th day of July, 2015.